### FRANK F. SMITH HARDWARE CO. v. S. H. POMEROY CO. et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

#### No. 316.

1. **Patents ☞289—Recovery of profits and damages from infringer held not barred by laches.**

   Delay of eight years after knowledge of defendant's infringement before bringing suit *held* not laches which barred the right to recover profits and damages, where defendant was promptly notified of the claim of infringement, and where during the intervening time complainants were engaged in stubbornly contested litigation involving the validity of their patent, which severely strained their financial resources, and in which litigation defendant gave active assistance in the attempt to defeat the patent.

2. **Patents ☞289—Poverty may be considered as factor in excusing delay in suing for infringement.**

   While poverty alone is not sufficient to excuse delay in asserting a claim for infringement, it may be considered as a factor, if there be other reasons which excuse the delay.

3. **Patents ☞283(1)—Willful infringement with impunity creates no equitable estoppel in favor of the infringer.**

   Willful infringement of a patent, though continued with impunity for years, creates no equitable estoppel in favor of the infringer.

4. **Patents ☞289—Laches not a matter of time, but of inequity of enforcing a claim.**

   Laches is not a mere matter of time, but is a question of inequity of enforcing a claim.

   Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Frank F. Smith Hardware Company against the S. H. Pomeroy Company and S. Harris Pomeroy. From the decree, complainant appeals. Modified.

Certiorari denied, 44 S. Ct. 637.

Suit for infringement of letters patent No. 970,656. Decree for plaintiff, granting injunctive relief against infringement, but denying the plaintiff all profits and damages prior to the commencement of the suit, because of laches or equitable estoppel. Plaintiff appeals.

Stephen J. Cox, of New York City, for appellant.

William A. Redding and William B. Greeley, both of New York City, for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Letters patent No. 970,656 were issued to the appellant on September 20, 1910, on an application filed January 28, 1909, for a transom adjusting device. Below the patent was held valid and infringed, and from this determination the defendants do not appeal. However, the court denied the appellant all profits and damages prior to the commencement of this suit, on the ground that it was guilty of laches and that an equitable estoppel was established against its claim. The invention relates to a means adopted to limit the extent of opening windows of the reversible pivot sash type, and particularly to automatically closing fireproof windows, and has for its object to simplify its means and to render the same positive in its action.

[1] The question to be decided upon this appeal is whether the appellant was guilty of such laches as bars its right of recovery of the profits made by the appellees and consequent damages sustained by the appellant. The bill of complaint was filed July 15, 1921. In the answer filed, the defense of laches is interposed. The decision below rests on the delay in the commencement of the action. On an application of the appellant, an injunction pendente lite was granted in the District Court on August 3, 1922, and the case went to final hearing in May, 1923. The validity of the patent has been in continuous litigation since 1913, up to the commencement of this action, except during the period of 1914 to 1916. The litigation was with an infringer with whom it appears the appellees maintained business and friendly relations. See Smith v. Yates (D. C.) 216 Fed. 362; Smith v. Yates, 244 Fed. 793, 157 C. C. A. 241; Yates v. Smith (C. C. A.) 271 Fed. 33. Yates' infringement of the patent in suit resulted in a price-cutting competition, which was conducted throughout much of the period between 1913 and 1919.

During the pendency of the Yates litigation, the appellant was in poor financial condition. Its officers consisted of father and son, both of whom were married and they drew salaries of $50 and $30 per week, respectively. The patentee was the managing officer of the appellant, and was incapacitated from business for a period of a year because of ill health—having suffered a stroke of paralysis—and he died in 1920. The appellees were advised of the patent in suit, and a stipulation is

found in the record to the effect that it notified the appellees of the alleged infringement of this patent on May 27, 1913. The appellees were not manufacturers, but users, and their use of the device, it was testified, was not thought to be extensive. The record also demonstrates that the appellees never built up nor extended their business, and it does not appear that their position has been so changed by reason of the use of this device as to result in an inequity to them caused by the delay. The president of the appellant testified that the appellees were supplying Yates with funds in his litigation. These facts, the poverty of the appellant, the extensive and expensive litigation carried on in establishing the validity of its patent in the Yates suits, the illness of the patentee, together with the nature and extent of the infringement, the appellant urges, excuse the long delay in commencing and prosecuting this suit against the appellees for their infringement.

The Yates litigation was stubbornly contested. It began in 1913, and resulted in a decree holding that the patent was valid and infringed. Smith v. Yates (D. C.) 216 Fed. 362. And this was affirmed by this court. 216 Fed. 359, 132 C. C. A. 503. It was then that the appellant learned of the appellees' infringement of the patent, and notice to that effect was served upon them. Before the Yates Case reached this court, an application for a rehearing was made on the ground of newly discovered evidence, which was supported by affidavit of the president of the Pomeroy Company and one of the appellees. It thus appears that these appellees were actively assisting in the efforts to defeat the patent in the Yates litigation. Later this motion was denied. The accounting in the case was concluded in 1915. Thereupon Yates went into bankruptcy, and the appellant, through a trustee, prosecuted to conclusion a suit to set aside a fraudulent transfer of property. This terminated in 1916. Frank Smith Co. v. Yates, 244 Fed. 795, 157 C. C. A. 241.

Yates was found to be infringing again, and the appellant filed a petition to have him adjudged in contempt. These proceedings were stubbornly contested. He contended then that he was a licensee under another patent, which justified his use of the device. In 1917 he was adjudged in contempt, and that decision was affirmed by this court. Frank Smith Co. v. Yates, 244 Fed. 793, 157 C. C. A. 241. In 1917, Yates brought suit in the District Court of New Jersey against the appellant for infringement of the Bogenberger patent, contending that the device made by the appellant was an infringement of that patent. It was argued that the Smith patent was therefore invalid. This suit was contested in the District Court until 1920, during which time depositions were taken in various cities of the country. Had Yates been successful in this suit, it would invalidate the patent in suit. However, in 1920, the New Jersey suit on the Bogenberger patent was dismissed, and the patent in suit upheld. Yates v. Smith (D. C.) 271 Fed. 27. An appeal was thereupon taken to the Court of Appeals for the Third Circuit, and the decree below was affirmed. 271 Fed. 33.

During the trial of the New Jersey suit, the appellees took an active part in that attack upon the patent in suit. It thus appears that the appellees voluntarily and openly assisted Yates, and must be charged with full knowledge of the nature of the litigation over the patent and

its severe financial strain upon the appellant. The president of the appellant was taken with what proved to be a fatal illness in 1916, and there is testimony that all these circumstances made it impossible financially for the company to prosecute the instant suit.

Nowhere in the record is there any testimony which would justify a belief on the part of the appellees that they would be free from suit for infringement, nor were they in any way permitted, by express or implied consent, to manufacture or use the device in question. The bill of complaint pleaded—and the proof justifies that plea—that the appellant was excused for the delay in suing for infringement by reason of the previous Yates litigation, taken in connection with the concurring circumstances above described. We regard these facts and circumstances as justifying an appeal to the conscience of a court of equity as a sufficient excuse for the delay. Such delay should not work to the advantage of one who has fraudulently and deliberately infringed, and who has stood behind and actively participated in a stubborn attack upon the validity of the patent by another litigant. They should not profit by the appellant's helpless condition, nor be permitted to escape from the results of their wrongdoing.

[2] While poverty alone, no matter how real or extensive, is insufficient to excuse a delay in asserting a claim for infringement (Hayward v. National Bank, 96 U. S. 611, 24 L. Ed. 855; Tompkins v. St. Regis Paper Co., 236 Fed. 221, 149 C. C. A. 411), still it may be considered as a factor if there be other reasons which excuse the delay. Want of knowledge or means of obtaining knowledge that the patent is being infringed, is an excuse. Wortendyke v. White, Fed. Cas. No. 18,050. So delay in prosecuting other infringers, while the validity of the patent is in active litigation, does not constitute laches. Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 945, 52 C. C. A. 559. Even in a case where the defense of want of knowledge on the part of one charged with laches is made, it has been insisted that such party, alleging want of knowledge, must show that he used reasonable diligence to inform himself of the facts. Foster v. Mansfield, etc., R. R., 146 U. S. 88, 13 Sup. Ct. 28, 36 L. Ed. 899.

In Galliher v. Cadwell, 145 U. S. 372, 12 Sup. Ct. 873, 36 L. Ed. 738, the Supreme Court pointed out that the defense of laches does not turn simply upon the number of years which have elapsed between the accruing of the rights, whatever they may be, and the assertion of them, but upon the nature of the evidence of those rights, its changes in values, and circumstances occurring during the lapse of years, and that the facts in each case may make a difference. But it said that a uniform principle pervades them all, for—

"They proceed on the assumption that the party to whom laches is imputed, has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay it would be an injustice to the latter to permit the former to now assert them."

Again, in Halstead v. Grinnan, 152 U. S. 416, 14 Sup. Ct. 643, 38 L. Ed. 495, the Supreme Court referred to the subject of laches, saying:

"The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them."

The record before us contains no evidence which would lead the appellees to the belief that the patentee, by silence or acquiescence, permitted them to proceed in the use of the device. There was no lulling the infringer into security, or inducing him to incur expenses or suffer losses which he would not otherwise have sustained; but, on the contrary, they were found active participators in trying to destroy the validity of the patent. They were duly served with notice that they were regarded as infringers. With this abundance of information as to the claims of the appellant, they took the risk of continued use of the device in question, for they, with eyes open and with full knowledge of the claim, continued to use the device which has been held to infringe. Thus willful trespassing upon the rights of the appellant creates no equitable estoppel in their favor.

[3, 4] It is no defense to a suit for an injunction and accounting for a continuing infringer to say that he has been trespassing upon the rights of the owner of the patent for years with impunity. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Drum v. Turner, 219 Fed. 188, 135 C. C. A. 74. As this court has said, it is not profitable to mention decisions wherein a particular lapse of time has been held sufficient to justify the defense of laches, for laches is not a mere matter of time, but is a question of inequity of enforcing a claim. Baltzley v. Spengler Co. (C. C. A.) 262 Fed. 423. There is no inequity in the appellant disregarding this infringement under the circumstances during the period of years.

We are referred to authorities as holding contrary to these conclusions. In Leggett v. Standard, 149 U. S. 287, 13 Sup. Ct. 902, 37 L. Ed. 737, the delay was 15 years, and was not excused. In Richardson v. Osborne, 93 Fed. 830, 36 C. C. A. 610, the infringing machines were manufactured with great rapidity and in large numbers, and the complainant's knowledge and observation of such trespasses went over a period of 14 years. No good excuse for the delay in the commencement of the suit was offered, and when the suit was commenced the patent had expired. In Westinghouse v. New York (C. C.) 111 Fed. 741, suit was started 15 years after the grant of the patent, and the court pointed out that there was no act or word uttered indicating that the complainant considered the patent valid or valuable or that it intended to call infringers to account. In Safety Car Heating Co. v. Consolidated Co., 174 Fed. 658, 98 C. C. A. 412, there was a 12-year unexplained delay before commencement of the suit. In Mosler Co. v. Lurie, 209 Fed. 364, 126 C. C. A. 290, there was a delay of 11 years, and no notice or intention expressed that the patent owners objected to the use of the patent openly and extensively. In Vacuum Co. v. Innovation (D. C.) 234 Fed. 942, there was a delay of 5 years, within

which time the defendant infringed openly, built up an extensive business in the infringing machines, and it appears that the defendant repeatedly requested information concerning the infringement. The infringement was doubtful, and but one claim was sustained. It appeared that there was no excuse offered for delay in prosecuting the claim.

We regard these cases as distinguishable. We hold that the record establishes sufficient excuse for the delay and that the defense of laches should have been overruled. Accordingly the decree is modified, so as to grant to the appellant recovery of the profits and gains and advantages or damages which accrued prior to the commencement of this suit.

Decree modified.

HOUGH, Circuit Judge (dissenting). It seems to me that the court has stated the facts for the plaintiff much too strongly. On the facts as found I do not disagree with the legal inference. But with my view of the circumstances I am compelled to agree with the opinion of L. Hand, J., in the lower court. For the rule of law very authoritatively stated, see Kelley v. Boettcher, 85 Fed. 55, 29 C. C. A. 14.