**FERGUSON BROS. MFG. CO. v. LORRAINE METAL MFG. CO., Inc.**

**No. 247.**

Circuit Court of Appeals, Second Circuit.

April 6, 1936.

E. Clarkson Seward and W. Saxton Seward, both of New York City, for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (George E. Middleton and H. Stanley Mansfield, both of New York City, of counsel), for appellant.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This suit was brought on United States patent No. 1,684,653 for a foldable table, which was granted to Benedict E. Willett on September 18, 1928. Claims 1, 2, 12, 16, 17, 18, and 19 were put in issue. Of these claims 1, 2, 12, and 16 were held valid and infringed by the so-called cable form of table manufactured by the defendant. Infringement of claim 2 by defendant's bell crank form of table, of which manufacture was begun after the suit was brought, was alleged in a supplemental bill, but was not sustained by the trial court. Claims 17, 18, and 19 were held anticipated and invalid.

While the suit was pending, United States patent No. 1,951,884 for a folding table was granted to R. B. Seward on March 20, 1934. The supplemental bill which was filed charged infringement of this patent by the defendant's bell crank form of table. Claims 6, 9, and 10 were relied upon. They were all held invalid without touching upon the question of infringement. The plaintiff's title to both patents has not been disputed.

The Willett patent discloses an actuating mechanism for moving simultaneously all the legs of a four-legged folding table, of the kind commonly known as a card table equipped with a leg pivotally mounted at each corner, in the same relative direction and to the same extent that one of them is moved, by taking hold of it and using it as a lever or handle. It had been common practice to mount each leg movably, to

provide it with a separate locking device, and to open and close such a table by moving one leg at a time with no connection whatever from one leg to another. There had been disclosed by Frank in patent No. 1,240,964 for a folding table granted to him on September 25, 1917, a mechanism by which the legs were connected each to one of the prongs of a four-prong spider mounted on a pivot in the center underneath the table top and having one prong extending through a slot in the table side outwardly to form a handle. By moving this handle slidably in the slot, the spider was made to turn in the desired direction to move all legs simultaneously either in an opening or closing direction. This construction was not suitable for the satisfactory movement of all four legs at once by applying the moving force directly to any one leg except perhaps the one connected to the prong which extended through the slot in the side of the table. Such force applied to any other leg had a tendency to take the prong to which that leg was connected out of the normal turning plan of the spider, thereby having a twisting effect which made movement so induced not a feasible way to fold or unfold the legs, though it was not wholly impossible. Willett not only overcame that difficulty, but made it unnecessary to have any part protrude through the table side, as did Frank's extended prong.

He placed a pulley near each corner underneath the table top. Between each pulley he placed a slide bar mounted on the under side of the table top in line with the pulleys but with a suitable space between either end of the slide bar and the adjacent pulley to permit the use of a cable connection from one end of the slide bar around the pulley to the nearest end of a similar slide bar on the bottom of the table top at the adjacent side of the table and in line with the pulleys it lay between. The construction was carried around the table, tying slide bar to slide bar until all four would move in the same direction and to the same extent when and as one was moved. Then each pivoted leg was attached to a separate slide by a brace member pivoted at the leg and at the slide bar and of sufficiently sturdy proportions to withstand distortion when any leg was moved so as to exert enough force through the brace to carry the slide bar to which it was connected back or forth as the leg was moved. The cables between the slides caused each slide to move correspondingly and a similar brace from each slide to its table leg transmitted the force to each leg. In this way all the legs were made to move uniformly in either the opening or closing direction when one was so moved. An ordinary spring peg lock was provided to hold one of the slides in position when the legs were extended, and, because all legs and slides were tied together as described, the locking of one locked all. This construction overcame the trouble found in the Frank table when opening and closing all legs at once by using one as a handle, and proved to be a convenient and satisfactory way so to fold or unfold the legs. It differed from Frank not only in mechanical detail but in the deliberate departure from Frank's intended application of the moving force directly to his spider and thence to each leg, and took advantage of the more convenient way of applying the force to one leg and thence through the connecting mechanism to the others. This new way to use one leg as a lever was made possible by Willett when he devised his new actuating mechanism in the form of a continuous peripheral power transmission from leg to slide and on around the table frame. It was not anticipated by Frank, whose patent is the only prior art in the record close enough to merit serious discussion. Meirowitz, in his patent No. 420,206, did, indeed, disclose a form of leg-actuating mechanism for a folding sofabed, but all he may fairly be said to have had in common with Willett was the idea of transmitting the moving force around the inner periphery of the frame by means of cables attached to bell cranks instead of going around pulleys. Though such a use of pulleys or bell cranks is but the use of equivalents, as will be pointed out later, it is plain that the Meirowitz device could not be taken to anticipate Willett, and we do not understand that any such contention is made except to bar a construction of claims so broad as to cover all actuating mechanism extending around the periphery of the table frame to move the legs in unison.

The defendant's so-called cable table was made under Kovats patent, No. 1,752,304, granted April 1, 1930. Its manufacture was discontinued after this suit was brought, and the bell crank form made instead. The cable form had pivotally mounted legs at each corner of the table;

each leg having a brace attached to it on a pivot with the other end of the brace pivoted to a slide fitted to move in a groove in a plate attached to the inside of the table frame. There was this brace and slide construction for each leg, and the slides were connected by cables which ran around pulleys, one of which was fastened in operable position at each corner underneath the table top. The slides were of a different type from the kind disclosed by Willett, but they were nevertheless slides, and were used as a part of the actuating means to do what his slides did. Each brace was locked in position, and of course with it was locked its leg, when its end moved into a curved end of a slide guide. As all legs, braces, and slides were connected, all were locked when one was, just as in Willett's, though in defendant's table there were four locks, each of which locked its own leg and all the others as well. There were two hand levers, one at a corner of the table opposite the other, either of which forced the ends of the braces into locked position in the curved slots and which also released them. Two were supplied simply for convenience so that one or the other could be grasped without turning the table. It is correctly said by the defendant that its cable table was capable of being used without automatic opening and closing, since each leg locked separately and when so used was an old structure in the art open to all. See patents No. 882,064 to Howlett and No. 906,131 to Hanley, granted in 1908. But that seems quite beside the point, since such use would in effect be discarding the automatic construction which was actually used and which is claimed to have infringed.

Claim 1 of the Willett patent reads: "1. A table comprising a top, legs pivotally mounted at the respective corners of said top and adapted to be folded into position substantially parallel with the edges of said top, guides arranged near the respective corners of said top, a flexible actuating device extending about said guides and comprising a series of bars, one for each leg, said bars being movable longitudinally of the adjacent edges of said top, and means for operatively connecting said bars with the respective legs."

This claim was originally claim 2, and was rejected by the Examiner on patent No. 1,240,963 to Frank (not the Frank patent previously mentioned). It did not have the "flexible actuating device extending about said guides" limited to one "comprising a series of bars, one for each leg, said bars being movable longitudinally of" the adjacent edges of the table top. It was canceled, and, when amended by adding the limitation just noted, was allowed as claim one which is set forth above. It is true that this amendment must be now given effect, as it was effective to secure the allowance of the claim. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335. Yet the slides used by the defendant were in all essentials the slides of the patent doing the same thing in substantially the same way. The ·defendant's form was an infringing equivalent of the construction of claim 1. See Nachman Spring-Filled Corp. v. Spring Products Corp. (C.C.A.) 68 F.(2d) 829.

Claim 2 is substantially claim 1 without the flexible actuating members extending around pulleys at the corners. It is to that extent broader than claim 1, and was infringed by defendant's cable table for the reasons already given. Claim 12 adds to the substance of claim 1 "a locking device cooperating with one of said actuating members to lock all of said actuating members against movement." The defendant's cable table differed in this respect only in having four such locking devices instead of one. That is, it had a plurality of such infringing devices, since each lock co-operated with the actuating mechanism and added its part to the locking of each leg. Claim 16 added to claim 12 "other means cooperating with one of said actuating members to limit the outward movement of said legs." This referred to extensions put by Willett outwardly of the plane of the sides of his slide which came into contact with the bar guide when the legs were extended perpendicularly from the table top and stopped them there. The defendant's cable table had little links which hit the ends of its slide grooves when the legs were perpendicular and performed the same function in practically the same way. All of these claims were rightly held valid and infringed by defendant's cable form table.

Claim 17 reads: "17. A table comprising a top, legs pivotally mounted on said top and adapted to be folded onto the same, an actuating device carried by said top, means for connecting said actuating device with the respective legs to cause said legs to be moved into and out of' their folded positions, and means acting

on said actuating device for locking said legs against movement in either direction when in their extended positions."

Read literally, this claim would be anticipated by the Frank patent, No. 1,-240,964, on his table above described. But, as we have seen, the Frank patent was for a table using different mechanical principles to provide its automatic features and did not anticipate the actual Willett invention. Willett disclosed a new construction of much merit. Claim 17 is drawn in general terms which should be limited in the light of the specifications to what "means" are substantially as therein described in order to give effect to the Patent Office action, since that may reasonably be done. So limited, the claim is valid. See Mantle Lamp Co. of America v. George H. Bowman Co. (C.C.A.) 53 F.(2d) 441–444; Benoit v. Wadley Co. (C.C.A.) 54 F.(2d) 1041–1044. The same is true of claim 18, which differs only in covering means "associated with said actuating device" for locking the legs against moving beyond their extended positions. These claims are both infringed by the defendant's cable form of table.

Claim 19 reads: "19. A table comprising a top, legs pivotally mounted on said top and adapted to be folded onto the same, an actuating bar for each leg slidably mounted on said top, means for connecting said actuating bars with the respective legs, and means cooperating with each actuating bar to lock the corresponding leg against movement beyond its extended position."

Nothing there claimed has the Willett automatic features tying the legs together so that all may be moved by moving one. Indeed, the claim is clearly anticipated and invalid, for tables having such construction had long been in common use. See the Howlett and Hanley patents already mentioned.

The defendant's bell crank form of table, which is charged to infringe claims 2, 17, and 18, is said to have been made in substantial accord with the disclosure of Kovats patent, No. 1,901,105. It was held not to infringe claim 2, and claims 17 and 18 were held invalid, nothing being decided as to infringement of them. The mechanism of this table differed from the one previously considered in that the pulleys of the first were replaced by bell cranks, the flexible cables by rigid metal straps, and the slide bars by metal pieces which were moved back and forth in a sliding motion by the movement of any one of the legs which caused its brace to oscillate about a pivot and thereby made the metal piece slide and transmit a corresponding motion to the metal strap connected to it. The result was the same as that obtained by using the Willett construction.

In Willett the pulleys do not turn more than enough to allow the table legs to be moved back and forth from a position perpendicular to the table top to one horizontal with it. That limited movement is within the range of a bell crank which becomes in all respects the equivalent of a pulley when used in this construction. The bell crank permits the use of rigid metal straps instead of flexible cable to do the same thing with strap and bell crank that Willett did with pulley and cable. And the significant fact is that it is done in practically the same way. Where the turning movement needed is not more than 90 degrees, a bell crank is the well-known equivalent of a pulley, and, where a pulley need not be used because a bell crank is an optional substitute, a rigid connection may well be used in place of a flexible one. And, if used where a pulling force, as here, is the one exerted, it is but the equivalent of a cable. And so too the little metal slide used by the defendant is but the Willett slide in essential characteristics. The sequence of energy movement has been somewhat changed, but the fact remains that the method of operation of the automatic part of one table is so like that of the other that the bell crank construction is the equivalent of Willett and infringes claim 2. See Nachman Spring-Filled Corp. v. Spring Products Corp., supra; Stevens v. Carl Schmid, Inc. (C.C.A.) 73 F.(2d) 54. "A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement." Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 50 S.Ct. 9, 13, 74 L.Ed. 147. It follows, of course, that the bell crank table infringes claims 17 and 18 as did the defendant's cable form of table.

■ The Seward Patent, No. 1,951,884.

This patent is for a bell crank form of automatic table, and claims 6, 9, and 10, which are said to be infringed, cover

such mechanism, which need not be described, in combination with a lock to hold the legs in position both when they are open and when they are closed. The defendant's bell crank form of table is alleged to infringe, but we do not find it necessary to deal with the claimed infringement in any way.

Claim 9 is typical, and will serve for present purposes. It reads: "9. In a folding table, a table top having boundary frame side rails, legs foldable around the table top, means whereby the movement of one leg will impart corresponding movements to the other legs, comprising bell crank levers pivoted to the under side of the table top at the corners thereof and endwise moving members connecting said bell crank levers, and releasable means for holding the legs at the limits of their movements, said releasable means comprising a spring mounted on a table top side rail, a member also mounted on said rail, said last named member being engaged by the spring so as to be influenced thereby and having a part projecting inwardly away from the inner face of the side rail and fitted to enter an aperture in the endwise moving member at a point adjacent an arm of said bell crank lever, and a manually operable element supported by the side rail and fitted to move the spring against its normal effort."

What has just been quoted is one way of claiming the combination of a bell crank automatic table of the kind already described with a spring peg lock fitted to move in and out of a hole in one of the slides when pressed by hand.

The Seward patent was granted March 20, 1934. An automatic table of the kind was then old, and the lock was the very old spring bolt in one of its common forms. Nor did the lock have any part in the operation of the automatic features of the table. It simply had to be released to permit their doing their part, and, when kept out of the way, allowed the table legs to be moved, but did nothing in aid of their movement.

There was originally in this suit a second Willett patent, No. 1,950,958, granted March 13, 1934. The parties have stipulated that the date of invention of this patent is February 4, 1931, and that it is earlier than Seward's date. It discloses such an automatic table with a spring lug type of lock so arranged that the lug will enter a notch in one of the slides to hold the legs in extended position. It clearly anticipates, as was held below, all the Seward claims in suit, which are all, accordingly, held invalid.

Decree modified.